# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| In re: | Civil Action No. 4:23cv2292 |
| Serta Simmons Bedding LLC, et al<br>Debtors[1] | Bankruptcy Case No. 23adv9001 |
| Excluded Lenders<br>　　　　　Appellant | |

## EXCLUDED LENDERS' MOTION TO STAY

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Dawn Intermediate, LLC (6123); Serta Simmons Bedding, LLC (1874); Serta International Holdco, LLC (6101); National Bedding Company L.L.C. (0695); SSB Manufacturing Company (5743); The Simmons Manufacturing Co., LLC (0960); Dreamwell, Ltd. (2419); SSB Hospitality, LLC (2016); SSB Logistics, LLC (6691); Simmons Bedding Company, LLC (2552); Tuft & Needle, LLC (6215); Tomorrow Sleep LLC (0678); SSB Retail, LLC (9245); and World of Sleep Outlets, LLC (0957). The Debtors' corporate headquarters and service address for these chapter 11 cases is 2451 Industry Avenue, Doraville, Georgia 30360.

Defendants and counterclaim plaintiffs AG Centre Street Partnership L.P., AG Credit Solutions Non-ECI Master Fund, L.P., AG Super Fund Master, L.P., AG SF Master (L), L.P., Silver Oak Capital, L.L.C., Ascribe III Investments, LLC, Columbia Cent CLO 21 Limited, Columbia Cent CLO 27 Limited, Columbia Floating Rate Fund, a series of Columbia Funds Series Trust II, Columbia Strategic Income Fund, a series of Columbia Funds Series Trust I, Contrarian Capital Fund I, L.P., Contrarian Distressed Debt Fund, L.P., Contrarian Centre Street Partnership, L.P., Gamut Capital SSB, LLC, North Star Debt Holdings, L.P., Shackleton 2013-III CLO, Ltd., Shackleton 2013-IV-R CLO, Ltd., Shackleton 2014-V-R CLO, Ltd., Shackleton 2015-VII-R CLO, Ltd., Shackleton 2017-XI CLO, Ltd., Z Capital Credit Partners CLO 2018-1 Ltd., and Z Capital Credit Partners CLO 2019-1 Ltd. (collectively, the "Excluded Lenders") respectfully submit this memorandum of law in support of their emergency motion to stay the proceedings.

## PRELIMINARY STATEMENT

On June 8, 2020, Serta announced a first-of-its kind transaction to "recapitaliz[e] the Company" (the "Unlawful Exchange Transaction") by creating new money, super-priority debt funded by only certain of its lenders (the "Favored Lenders"), which would rank ahead of the first lien—i.e., first-priority—debt held by certain of its other lenders (the "Excluded Lenders"). Multiple lawsuits were quickly filed in state and federal court to prevent or otherwise object to the Unlawful Exchange Transaction, as well as to other similar transactions alleged to violate non-participating lenders' rights to *pro rata* sharing of first lien debt under parties' various credit agreements. Over many objections, the Unlawful Exchange Transaction closed on June 22, 2020.

The Unlawful Exchange Transaction failed to save Serta, and the company entered Chapter 11 proceedings in January 2023 in the midst of litigation in New York Supreme Court regarding the Unlawful Exchange Transaction. Numerous parties have filed objections to Serta's various proposed Chapter 11 plans in the interim. Hours after entering Chapter 11, Serta and the

Favored Lenders filed an adversary proceeding in the Southern District of Texas, seeking a declaration that they did not breach the parties' 2016 first lien term loan agreement (the "Credit Agreement") or the implied covenant of good faith and fair dealing. Following a summary judgment hearing, the Bankruptcy Court "reached a different conclusion" about the meaning of the term "open market purchase" than other courts, finding that the Credit Agreement allowed for non-*pro rata* sharing of first lien debt in the event of an "open market purchase," and that the Unlawful Exchange Transaction qualified as one (the "Summary Judgment Order"). The Excluded Lenders appealed directly to the Fifth Circuit, which promptly accepted interlocutory appeal.

Following a four-day trial on the Excluded Lenders' implied covenant claim as well as confirmation of the Debtors' proposed Second Amended Chapter 11 Plan (Bankr. Dkt. 977, the "Plan") on June 9, 2023, the Bankruptcy Court confirmed the Plan (the "Confirmation Order"). On June 16, 2023, the Excluded Lenders filed an emergency motion to stay pending resolution of their current appeal of the Summary Judgment Order as well as their forthcoming appeal of the Confirmation Order. The Bankruptcy Court having denied their motion, the Excluded Lenders respectfully request that this Court stay the Plan pending those appeals.

A stay should be granted where, as here, there is (1) a likelihood of success on the merits; (2) irreparable injury will occur if the stay is not granted; (3) the stay would not substantially harm the other parties; and (4) the stay would serve the public interest. *In re Tex. Equip. Co.*, 283 B.R. 222, 226–27 (Bankr. N.D. Tex. 2002). Courts will consider the first element satisfied where the movant demonstrates it simply has a "substantial case" on appeal and where, as here, (a) the legal issue being appealed lacks clear appellate guidance and (b) the other equitable factors support the movant. *Id.* at 227. The instant motion undoubtedly meets this standard.

All of the legal questions on appeal support a finding that there is a substantial likelihood of the Excluded Lenders prevailing, let alone that they have a "substantial case." The

2

Excluded Lenders' appeal of the Summary Judgment Order presents a substantial case on the merits involving a serious legal question that has been decided differently by various trial courts but has yet to be addressed by any appellate court: whether an "up-tier" exchange transaction that violates a credit agreement's *pro rata* sharing requirement constitutes an "open market purchase" that is exempt from *pro rata* sharing under the agreement. In view of the absence of appellate authority on this question, and two trial-level decisions reaching a conclusion different from that of the Bankruptcy Court, there is plainly a "substantial case" on appeal.

Each of the other three factors also strongly counsels in favor of a stay. *First,* there is the potential for significant prejudice to the Excluded Lenders in the absence of a stay. Notwithstanding the Bankruptcy Court's admonitions that the doctrine of equitable mootness in the Fifth Circuit "doesn't exist,"[2] the Debtors and Favored Lenders refuse to renounce an intent to pursue it, and indeed appear poised to do so. To be clear, the Excluded Lenders emphatically reject that any appeal of the Confirmation or Summary Judgment Order could be equitably moot, but if such an argument is advanced and accepted by the Fifth Circuit, the Excluded Lenders will be irreparably and grievously harmed. *Second*, no party will be injured by a stay. With or without a stay, until the appeal is resolved, the Debtors face significant economic uncertainty because they have indemnified the Favored Lenders against the Excluded Lenders' claims. The Debtors are thus no worse off with a stay in place. *Third*, the public interest weighs in favor of a stay pending appeal because an appellate ruling concerning the permissibility of the Unlawful Exchange Transaction is likely to have a significant impact on the $1.3 trillion leveraged loan market.

---

[2]   (May 25, 2023 (Adv. Pro. Dkt. 318) Tr. 145:22–25.)

**STATEMENT OF FACTS**

In 2016, Serta undertook a $2.6 billion refinancing pursuant to (1) the Credit Agreement, which provides for for $1.95 billion (the "First Lien Term Loans"); (2) a second lien term loan agreement providing for $450 million (the "Second Lien Term Loans"); and (3) a $225 million asset-based revolving credit facility. The Credit Agreement requires *pro rata* distribution of collateral and sharing of payments among the lenders who own First Lien Term Loans (the "First Lien Lenders"). The payment waterfall and *pro rata* sharing provisions, referred to as "sacred rights," can be amended only with "the consent of each Lender directly and adversely affected thereby." (Ad. Pro. Dkt. 91-3 § 9.02(b)(A.)) Section 9.05(g) permits narrow exceptions, allowing a lender to "assign all or a portion of its rights and obligations under this Agreement in respect of its Term Loans to any Affiliated Lender on a non-pro rata basis (A) through Dutch Auctions open to all Lenders holding the relevant Term Loans on a pro rata basis or (B) through open market purchases[.]" (*Id.* § 9.05(g.))

On June 8, 2020, Serta announced that it had entered into a transaction support agreement with a the "Favored Lenders" to "recapitaliz[e] the Company" by creating (i) $200 million of new money super-priority "first out" debt, funded by the Favored Lenders, which would rank ahead of the Excluded Lenders' First Lien Term Loans; (ii) up to $875 million of super-priority "second out" debt, issued in exchange for Favored Lenders' First and Second Lien Term Loans, which also would rank ahead of the Excluded Lenders' First Lien Term Loans; and (iii) an unspecified amount of capacity to incur additional super-priority "third out" debt that would also would rank ahead of the Excluded Lenders' First Lien Term Loans (the Unlawful Exchange Transaction). (Ad. Pro. Dkt. 91-2.) As part of the Unlawful Exchange Transaction, the Debtors also entered into an integrated credit agreement (the "PTL Credit Agreement") providing that the Debtors would broadly indemnify the Favored Lenders and their related persons against "any and

4

all losses, claims, damages and liabilities . . . incurred by or asserted against any [Favored Lender or any of their related persons] arising out of, in connection with, or as a result of (i) the execution or delivery of the Loan Documents . . . and/or (iv) any actual or prospective claim, litigation, investigation or proceeding relating to any of the foregoing, including in connection with any action, litigation or other dispute or proceeding related to the Exchange Transactions [i.e., the Unlawful Exchange Transaction]" (the "Favored Lender Indemnity Claims").  (Bankr. Dkt. 824 at 3.)  Serta failed to obtain the Excluded Lenders' consent to amend or modify the Credit Agreement to facilitate the Unlawful Exchange Transaction, nor did Serta allow other lenders (including the Excluded Lenders) to exchange their loans for the "super-priority" loans granted to the Favored Lenders under the Unlawful Exchange Transaction.

On June 11, 2020, certain Excluded Lenders filed suit in New York Supreme Court, seeking a temporary restraining order and preliminary injunction to prevent the transaction.  (Ad. Pro. Dkt. 91-24.)  After granting a TRO, Justice Masley denied the motion for a preliminary injunction because the plaintiffs had not shown a likelihood of success or established irreparable harm due to the availability of monetary damages.  *North Star Debt Holdings, L.P.* v. *Serta Simmons Bedding, LLC*, 2020 WL 3411267, at *4–6 (N.Y. Sup. Ct. (N.Y. Cnty.) June 19, 2020).  The Unlawful Exchange Transaction closed on June 22, 2020, and the *North Star* plaintiffs voluntarily withdrew their claims without prejudice.  (Ad. Pro. Dkt. 91-26, 27.)

On July 2, 2020, investment funds managed by affiliates of LCM Asset Management LLC ("LCM") challenged the Unlawful Exchange Transaction in the Southern District of New York.  *LCM XXII Ltd.* v. *Serta Simmons Bedding*, LLC, 2021 WL 918705, at *2 (S.D.N.Y. Mar. 10, 2021); Ad. Pro. Dkt. 91-30 (amended complaint).  On March 29, 2022, after extensive briefing, Judge Failla denied a motion to dismiss LCM's claims for breach of contract and breach of the implied covenant of good faith and fair dealing.  See *LCM*, 2022 WL 953109, at

5

\*6–9, \*14–16.   The court held that "[a]t minimum," the term "open market purchase" is ambiguous, and denied Serta's motion to dismiss LCM's breach of contract claim. (*Id.* at \*7, 9.)

On October 17, 2022, Justice Masley denied a motion to dismiss filed in a challenge to a similar "uptier" transaction in *ICG Global Loan Fund 1 DAC* v. *Boardriders, Inc.*, 2022 WL 10085886 (N.Y. Sup. Ct. (N.Y. Cnty.) Oct. 17, 2022). Among other things, Justice Masley rejected the defendants' arguments that, as a matter of law, there was no breach of the underlying *pro rata* sharing provisions as a result of a purported "open market purchase" exception, finding that the term "open market purchase" was ambiguous and could not be interpreted based solely on the pleadings. *Boardriders*, 2022 WL 10085886, at \*8–9.

On November 16, 2022, the *North Star* plaintiffs and a half-dozen additional lenders filed a new action before Justice Masley, asserting nine causes of action against Serta and the Favored Lenders for breach of contract and the implied covenant of good faith and fair dealing. (Ad. Pro. Dkt. 91-31.) Serta and the Favored Lenders moved to dismiss, but briefing was suspended when, two weeks later, Serta filed its Chapter 11 petition in the Bankruptcy Court on January 23, 2023. (Bankr. Dkt. 1.) Hours after, Serta and the Favored Lenders filed an adversary proceeding, seeking a declaration that they did not breach the Credit Agreement or the implied covenant of good faith and fair dealing. (Ad. Pro. Dkt. 1.) Summary judgment briefing was completed on March 24, 2023, and oral argument was held on March 28, 2023.

Ruling from the bench, the Bankruptcy Court noted that "a different court reached a different conclusion" about the meaning of open market purchase in the Credit Agreement (March 28, 2023 Hr'g (Ad. Pro. Dkt. 133) Tr. 134:1–2.), but held—without elaboration—that there was "no question" that the transaction was permitted under the Credit Agreement. (*Id.* at 134:12-15). The Bankruptcy Court entered the Summary Judgment Order on April 6, 2023. (Ad. Pro. Dkt. 142.) The Excluded Lenders appealed the Summary Judgment Order directly to the Fifth

Circuit, which accepted interlocutory appeal under Rule 54(b) on April 26, 2023 (5th Cir. Dkt. 4-1, 2), and the "open market purchase" issue is now pending appeal in the Court of Appeals (as the Excluded Lenders' implied covenant claim was not dismissed, it remained in the case).

Serta entered Chapter 11 proceedings in January 2023 and filed a series of proposed Chapter 11 plans and amendments thereto between January 24 and May 23, 2023. (*See* Bankr. Dkt. 28, 425, 526, 544, 796, 874, 977.) Throughout litigation and trial, the Excluded Lenders objected to the Plan. (*See, e.g.*, Bankr. Dkt. 656, 824, 318).[3] Specifically, the Excluded Lenders objected to the provision in the Plan and its supplement (Bankr. Dkt. 992, the "New Term Loan Credit Facility Agreement," Ex. B, § 9.03(c)) providing that the Favored Lender Indemnity Claims survive or "ride through" the Chapter 11 cases (the "Indemnity Provision").[4] (*See infra* at 10–11.)

Following a four-day trial on the Excluded Lenders' implied covenant claim as well as confirmation of the Plan, on June 9, 2023, the Bankruptcy Court entered the Confirmation Order, confirming the Plan. (Bankr. Dkt. 1055.) Three days prior, the Court entered an opinion explaining its rationale for the Confirmation Order, thereby modifying the "requirement under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of fourteen days after entry of the order . . . to shorten the time to seven days." (Bankr. Dkt. 1045 at 16.) On June 16, 2023, the Excluded Lenders filed a timely emergency motion to stay the Confirmation Order pending resolution of their current appeal of the Summary Judgment Order and their forthcoming appeal of the Confirmation Order. (Bankr Dkt. 1091, the "Motion to Stay.") The

---

[3] Numerous other parties submitted objections between March 15 and May 26, 2023.

[4] The Debtors have sought to employ the Indemnity Provision in many different forms through various iterations of the Plan, first including it in the Prepetition Priority Term Loan Agreement (Bankr. Dkt. 865-42, § 9.03(b)), later in draft provisions (*see, e.g.*, Bankr. Dkt. 875, Ex. A, § 8.5(b)), and ultimately placing it in the New Term Loan Credit Facility Agreement's exit financing provision. (*See* Bankr. Dkt. 992, Ex. B § 9.03(c.)) In any event, Bankruptcy Code Section 502(e)(1)(B) forbids the Indemnity Provision. (*See infra* at 10–11.)

7

Excluded Lenders joined Citadel Equity Fund Ltd.'s *Motion to Extend Stay of Effective Date of Confirmation Order* (Bankr. Dkt. 1084) (the "Citadel Motion") and requested, in the alternative, that the Bankruptcy Court extend the current stay of the Confirmation Order to June 23, 2023 to allow time for this Court to adjudicate any interested parties' requests for a stay of the Confirmation Order. (*Id.*)

Following a hearing on June 21, 2023, the Bankruptcy Court denied the Excluded Lenders and Citadel's motions, finding insufficient grounds for a stay pending appeal. The Bankruptcy Court ordered that "if a stay pending appeal were to be granted, the appropriate bond for the imposition of such a stay would be no less than $1,000,000,000," (Bankr Dkt. 1124 at 2), but that holding is not binding on this Court. (*See infra* at 14.) Finally, the Bankruptcy Court ruled that the Confirmation Order will take effect at 12:00 p.m. (Central Time) on Friday, June 23, 2023, to allow the parties time to appeal to this Court.

## ARGUMENT

Bankruptcy Rule 8007(a) authorizes the Court to grant "a stay . . . or the suspension . . . of proceedings in a case or other relief" as related to the Confirmation Order. Fed. R. Bankr. P. 8007. A moving party is entitled to a stay if it establishes: "(1) likelihood of success on the merits, (2) irreparable injury if the stay is not granted, (3) absence of substantial harm to the other parties from granting the stay, and (4) service to the public interest from granting the stay." *Hunt* v. *Bankers Trust Co.*, 799 F.2d 1060, 1067 (5th Cir. 1986); *see also Ruiz* v. *Estelle,* 666 F.2d 854, 856 (5th Cir. 1982); *In re Tex. Equip. Co.*, 283 B.R. at 226–27. These factors are not applied in a "mechanical fashion," *Reading & Bates Petroleum Co.* v. *Musslewhite*, 14 F.3d 271, 272 (5th Cir. 1994), and "the absence of any one factor is not fatal to a successful motion for stay." *In re Permian Producers Drilling, Inc.*, 263 B.R. 510, 515 (W.D. Tex. 2000) (internal citations omitted).

As demonstrated below, here, each factor strongly counsels in favor of a stay.

8

A.   **The Excluded Lenders Have a Substantial Case on the Merits of the Appeal**

The Excluded Lenders have already appealed the Summary Judgment Order on their contractual claim that the Unlawful Exchange Transaction was not a permissible "open market purchase" under the 2016 Credit Agreement, and they also intend to appeal the Confirmation Order's approval of an indemnity provision that violates Section 502(e)(1)(B) of the Bankruptcy Code.

Applying the first of the four stay factors, courts in the Fifth Circuit have held that a movant must show merely that it will present a "substantial case" or a strong case on appeal, not a "likelihood of success on the merits," where there is a close or unresolved legal question present, and the equities otherwise strongly support a stay. *In re Tex. Equip. Co.*, 283 B.R. at 227 (citing *Arnold* v. *Garlock Inc.*, 278 F.3d 426, 438–39 (5th Cir. 2001); *Ruiz* v. *Estelle*, 650 F.2d 555, 565 (5th Cir. 1981));[5] *see also Sw. Airlines Co.* v. *Transp. Workers Union of Am. AFL-CIO Loc. 555*, 2018 WL 2317710, at *2 (N.D. Tex. May 22, 2018); *In re Friendship Diaries,* 2014 WL 527232, at *2 (Bankr. N.D. Tex. Feb. 10, 2014).

The legal question of whether the Unlawful Exchange Transaction was permitted under the "open market purchase" exception to *pro rata* treatment in the 2016 Credit Agreement is a substantial one as to which courts have reached conflicting results.  While the Bankruptcy Court concluded the term was unambiguous and plainly permitted the transaction, two other courts have reached a contrary conclusion.  In March 2022, Judge Failla of the Southern District of New York analyzed the same transaction that is at issue here, and reached the opposite conclusion.  *See*

---

[5]   Consistent with this principle, the Fifth Circuit later articulated that where, as here, "'the balance of equities (i.e. consideration of the other three factors) is . . . heavily tilted in the movant's favor,'" the court may grant a stay provided that the issue at hand is, as here, "one with patent substantial merit." *Ruiz* v. *Estelle*, 666 F.2d 854, 857 (5th Cir. 1982) (citing *Ruiz*, 650 F.2d 555, 565–66).

*LCM*, 2022 WL 953109, *7–9.  Similarly, in October 2022, Justice Masley of the New York Supreme Court considered a similar credit agreement, also governed by New York law, which likewise included an exception to *pro rata* treatment for "open market purchases."  *Boardriders*, 2022 WL 10085886, at *6, *8–9.  Justice Masley, like Judge Failla, denied a motion to dismiss the complaint because the plain meaning of "open market" could require that the transaction be open to "all lenders."  *Id.* at *8–9.  Accordingly, the court held that the undefined term was "reasonably susceptible of" two conflicting meanings, and, as such, the contract was ambiguous.  *Id.* at *9.

Given the undisputed absence of appellate authority on this purely legal issue—and the divergent views of lower courts—this is the paradigmatic case where a movant presents a "substantial case" on appeal.  *See In re Tex. Equip. Co.*, 283 B.R. at 227 (holding that when an appeals court has not definitively addressed the legal issue presented, "the movant more easily satisfies the first element"); *see also In re Genesis Health Ventures, Inc.*, 367 B.R. 516, 521 (Bankr. D. Del. 2007).

The Confirmation Order also presents a "substantial case" on the merits with respect to the Debtors' indemnification of the Favored Lenders for claims regarding the Unlawful Exchange Transaction.  The Excluded Lenders challenged the indemnity as an impermissible contingent claim under Section 502(e)(1)(B).  The Bankruptcy Court held that "[a]lthough the Plan has changed several times in its implementation of the post-confirmation indemnity," and "the final language is virtually identical to the pre-petition indemnity," the implementation changes were justified because "the Plan is extraordinarily complex," and the identical indemnity language was to be expected because potential liability from the Unlawful Exchange Transaction has not changed. (Bankr. Dkt. 1045 at 13; *see also* Bankr. Dkt. 1055 at 25–26.)  Noting that a proposed plan "may contain one or more settlements," the Bankruptcy Court made clear that it "views the

fundamental issue as the Debtors' application of its business judgment" and overruled the Excluded Lenders' objection. (*Id.*; *see also* Bankr. Dkt. 1055 at 25.)

Courts must disallow a claim under Section 502(e)(1)(B) if three circumstances are met: "(i) the debtor is co-liable with the claimant; (ii) the claim is contingent; and (iii) the claim is for 'reimbursement or contribution.'" *In re Alta Mesa Res., Inc.*, 2022 WL 17984306, at *3 (Bankr. S.D. Tex. Dec. 28, 2022). The Excluded Lenders have shown that the requirements under Section 502(e)(1)(B) are met. As even the Debtors acknowledge, an indemnity is a claim for reimbursement or contribution and the claim is contingent, so the second and third factors are met. (Debtors' Br., Bankr. Dkt. 879 ¶ 198) ("The Debtors acknowledge that the prepetition Indemnity Claim is both contingent and a claim for reimbursement or contribution.") The only question is whether the Debtors would be co-liable with the claimants, the Favored Lenders, and they are. Co-liability is interpreted broadly. *See, e.g.*, 4 Collier on Bankruptcy ¶ 502.06(b) (16th ed. 2023) ("Under Section 502, codebtor status is broadly interpreted."). The Debtors and Favored Lenders are co-liable on the claims because they have overlapping liability on the "open market purchase" claim. Thus, if the Excluded Lenders prevail, the Debtors and the Favored Lenders would be liable for breach of contract. This is quintessential co-liability. *See In re Dow Corning Corp.*, 244 B.R. 705, 715 (Bankr. E.D. Mich. 1999) ("[C]o-liability exists when each party is obligated to pay the same person for the same benefits."). The fact that the Bankruptcy Court has ruled in favor of the Debtors and Favored Lenders does not eliminate co-liability, particularly given the pending appeals. *See In re Alper Holdings USA*, 2008 WL 4186333, at *6–7 (S.D.N.Y. Sept. 10, 2008). There is thus, at minimum, a "substantial case" with respect to the first requirement of 502(e)(1)(B), and the other two requirements are undisputed.

B.     **The Excluded Lenders Will Suffer Irreparable Injury If Their Claims are Considered Equitably Moot**

If the Court does not grant a stay, the Debtors and Favored Lenders appear poised to argue that the Excluded Lenders claims' on appeal will be equitably moot upon consummation of the plan. Indeed, notwithstanding the Bankruptcy Court's comment that the Excluded Lenders "don't have to worry about equitable mootness," (May 25, 2023 (Adv. Pro. Dkt. 318) Tr. 145:22–23), the Debtors have made clear that they are "not here to waive any arguments on equitable mootness." (*Id.* at 217:2–3.) The Excluded Lenders agree with the Bankruptcy Court that their appeal should not be deemed equitably moot—and that the authority in the Fifth Circuit strongly precludes that result—yet it remains an argument the Debtors refuse to disclaim, and thus remains a risk. And if that risk materializes and the Excluded Lenders' claims are rendered equitably moot, that will constitute irreparable injury sufficient to warrant a stay. *See In re Fiesta Inn & Suites, LP*, 2009 WL 5195961, at *3 (Bankr. W.D. Tex. Dec. 21, 2009); Order at *1, *In re ATP Oil & Gas* (Bankr. S.D. Tex. June 27, 2013), ECF No. 2139 (The "effective loss of [the movant-appellant's] appellate rights through prudential mootness" would qualify as an irreparable injury); *In re Herrera*, 2010 WL 148182, at *3 (Bankr. W.D. Tex. Jan. 8, 2010) (risk of equitable mootness would "satisfy the requirement of showing some irreparable injury"); *In re Westwood Plaza Apartments, Ltd.*, 150 B.R. 163, 169 (Bankr. E.D. Tex. 1993) (granting stay where "consummation of the Plan may render any challenge to the confirmation moot").

C.     **No Party Will Suffer Injury If the Stay is Granted**

If the stay is granted, no party will suffer substantial harm. Despite the Debtors' interest in getting a "fresh start," a stay will not meaningfully delay it because, even if the Plan goes effective, they will emerge with the uncertainty of an indemnity in favor of the Favored Lenders hanging over their heads. The Debtors have not quantified how much the indemnity

12

will cost, (May 15, 2023 Afternoon Session (Adv. Pro. Dkt. 273) Tr. 116:3–24), and the Favored Lenders do not know whether or not they will actually invoke it. (*See also* May 17, 2023 Afternoon Session (Adv. Pro. Dkt. 283) Tr. 139:2–140:11; Bankr. Dkt. 1045 at 15.) As counsel for the Favored Lenders stated in closing argument, "the owners of the business in the future [will] have a decision to make if there is a claim: whether or not they put the claim back against the company and impact their equity or they deal with the claim in some other fashion." (May 25, 2023 (Adv. Pro. Dkt. 318) Tr. 86:12–16.) And no party knows when or how the Fifth Circuit will rule on the appeal. All of that will be true with or without a stay.

### D. **The Public Interest Favors a Stay**

In a typical case, where, as here, the parties involved are all private entities, courts hold that the direct impact of a stay on the public interest is likely to be minimal or nonexistent, and thus this factor is often neutral. *See Klobotos Props., LLC* v. *Thomas*, 2021 WL 2953687, at *5 (E.D. Tex. Mar. 1, 2021) (recognizing that because the case "involves a private transaction, the dispute's impact on the public interest is likely to be minimal"). As discussed in Section A, *supra*, the appeal of the Summary Judgment Order calls upon the Fifth Circuit to interpret, as a matter of first impression, the term "open market purchase." Given how commonly that term is used in credit agreements, the Circuit's decision may have a significant impact upon the $1.3 trillion market for leveraged loans. *See* Bd. of Governors of the Fed. Rsrv. Sys., *Financial Stability Report* 20 (Nov. 2022), https://www.federalreserve.gov/publications/files/financial-stability-report-2221104.pdf. If just a third of the loan agreements in the leveraged loan market feature an "open market purchase" carve-out to *pro rata* sharing provisions, hundreds of billions of dollars in loans

will be affected by the outcome of this case.[6] Indeed, were there any doubt about the importance of this case to the credit markets, it would be dispelled by the robust coverage afforded to it by the mainstream financial press. *See, e.g.*, Andrew Scurria, *Serta Simmons Wins Ruling on 'Creditor Violence' Deal*, Wall St. J. (Mar. 28, 2023), https://www.wsj.com/articles/serta-simmons-wins-ruling-on-creditor-violence-deal-965e2aa#; Sujeet Indap & Eric Platt, *Big Debt Investors Dealt Blow in Mattress Maker Bankruptcy Ruling*, Financial Times (Mar. 28, 2023), https://www.ft.com/content/3364f0ab-0073-41a0-ad5b-f13cd02ff524.

### E.     The Court Should Grant a Stay without a Bond

To grant a stay, the Court need not require the posting of a bond, which is "discretionary and is not a prerequisite to obtain a stay pending appeal." *In re Suprema Specialties, Inc.*, 330 B.R. 93, 95 (S.D.N.Y. 2005); *see also* Fed. R. Bankr. P. 8007(c) ("The district court, BAP, or court of appeals *may condition* relief on filing a bond or other security with the bankruptcy court") (emphasis added).[7] The rationale behind requiring a bond is to protect debtors against potential losses while an appeal is pending (*see In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 350 (S.D.N.Y. 2007)), but any losses the Debtors may sustain during a stay pending appeal would be minimal compared to those they stand to suffer under the indemnity in favor of the Favored Lenders, which the confirmed Plan expressly leaves open as a possibility. The Court should

---

[6]   Professor Vincent Buccola, associate professor of Legal Studies and Business Ethics at the Wharton School of the University of Pennsylvania, observed in his expert declaration in support of the LCM Lenders' Opposition to Plaintiffs' Partial Motions for Summary Judgment, that of the 500 publicly available leveraged loan agreements he reviewed, nearly 30% included an "open market purchase" exception like the one at issue in this case, and that the use of the exception had increased from 20% in 2011 to 30% in 2016. (Adv. Pro. Dkt. 84 ¶ 23.)

[7]   The Bankruptcy Court has ordered that "if a stay pending appeal were to be granted, the appropriate bond for the imposition of such a stay would be no less than $1,000,000,000," (Bankr Dkt. 1124 at 2), but that holding is not binding on this Court. *See, e.g.*, *Davis* v. *Farm Bureau Bank, FSB*, 2008 WL 1924247, at *4 (W.D. Tex. Apr. 30, 2008) ("[T]he District Court is not bound by *stare decisis* as to decisions of the Bankruptcy Court.")

therefore exercise its "substantial discretion" and hold that no bond need be posted here. *See, e.g.*, *In re Fiesta Inn & Suites, LP*, 2009 WL 5195961, at *2 (Bankr. W.D. Tex. Dec. 21, 2009).

## CONCLUSION

The Court should stay the effectiveness of the Confirmation Order while the Summary Judgment Order and Confirmation Order are pending on appeal.

Dated: New York, New York
June 22, 2023

Respectfully Submitted,

*s/ John F. Higgins*
**FRIEDMAN KAPLAN SEILER ADELMAN & ROBBINS LLP**
Lawrence S. Robbins*
Eric Seiler*
Anne E. Beaumont*
Jamuna D. Kelley*
Blair R. Albom*
Elizabeth Bierut*
7 Times Square
New York, NY 11036-6516
(212) 833-1100
lrobbins@fklaw.com
eseiler@fklaw.com
abeaumont@fklaw.com
jkelley@fklaw.com
balbom@fklaw.com
ebierut@fklaw.com

*Attorneys for the Excluded Lenders*

-and-

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Kenneth S. Ziman*
Brian S. Hermann*
Lewis R. Clayton*
Andrew J. Ehrlich*
Michael J. Colarossi*
Robert J. O'Loughlin*
Sarah J. Prostko*

15

Jackson Yates*
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000
kziman@paulweiss.com
bhermann@paulweiss.com
lclayton@paulweiss.com
aehrlich@paulweiss.com
mcolarossi@paulweiss.com
roloughlin@paulweiss.com
sprostko@paulweiss.com
jyates@paulweiss.com

*Attorneys for the Excluded Lenders with respect to Plaintiffs' Claims and Counterclaims Only*

-and-

**PORTER HEDGES LLP**
John F. Higgins (TX 09597500)
M. Shane Johnson (TX 24083263)
Megan N. Young-John (TX 24088700)
1000 Main Street, 36th Floor
Houston, TX  77002
(713) 226-6000
jhiggins@porterhedges.com
sjohnson@porterhedges.com
myoung-john@porterhedges.com

*Attorneys for the Excluded Lenders with respect to Plaintiffs' Claims and Counterclaims Only*

*admitted pro hac vice

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2023, I caused to be served the foregoing Excluded Lenders' Emergency Motion to Stay, via ECF on all parties.

/s/ *John F. Higgins*
John F. Higgins